IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

FILED

99 SEP 21  PM 3: 05

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| GREGORY ALLEN BROWN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 97-B-0246-M |
| | ) | |
| JOE S. HOPPER, COMMISSIONER OF | ) | |
| THE ALABAMA DEPARTMENT OF | ) | |
| CORRECTIONS, | ) | **ENTERED** |
| | ) | |
| Respondent. | ) | SEP 2 1 1999 |

## MEMORANDUM OPINION

Petitioner Gregory Allen Brown ("the petitioner") contests his 1991 capital murder conviction pursuant to 28 U.S.C. § 2254. A magistrate judge of this court reviewed the claims presented by the petitioner and recommended that the petition be denied. Counsel for the petitioner has filed a number of objections to the Report and Recommendation of the magistrate judge. Counsel asserts that the magistrate judge improperly concluded that (1) the petitioner did not invoke his right to counsel; (2) the petitioner's confession was not obtained following promises of beneficial treatment; and, (3) the petitioner's claim of insufficient evidence is procedurally barred. Upon careful consideration of the record, the submissions of the parties, and the relevant law, this court is of the opinion that the Report and Recommendation of Magistrate Judge John E. Ott is due to be adopted and approved.

### I. RIGHT TO COUNSEL

#### A. The Objections

The petitioner asserts that the magistrate judge mistakenly found that his inquiry, "Is it going to piss y'all off if I ask for my-to talk to a friend that is an attorney . . . ," was not an unambiguous request for counsel, mandating that the police discontinue the custodial



questioning. In support of this claim, the petitioner asserts that the failure of the Alabama Court of Criminal Appeals to follow its earlier holding and the magistrate judge's independent review and conclusion that this statement was not an unambiguous request violates the law of the case doctrine. He also asserts that his inquiry was an invocation of his right to counsel. Therefore, the subsequent statement that was obtained by the law enforcement officers violated his Fifth, Sixth, and Fourteenth Amendment rights.

### B. Pertinent Facts

The Alabama Court of Criminal Appeals on direct appeal of the petitioner's conviction found:

> In this case, the appellant's request to speak to a friend who is also an attorney was clearly an invocation of his right to counsel. Further interrogation by the investigators without providing the appellant the opportunity to confer with an attorney violated the appellant's Fifth Amendment rights as discussed in *Miranda* and *Edwards*.

*Brown v. State*, 630 So. 2d 481, 484 (Ala. Crim. App. 1993). The court reversed the petitioner's conviction and remanded the case for a new trial. The state's application for a rehearing and for a writ of certiorari were denied by the state courts.

The United States Supreme Court granted the state's petition for a writ of certiorari on October 3, 1994. The judgment was vacated and the case remanded to the Alabama Court of Criminal Appeals for further consideration in light of *Davis v. United States*, 512 U.S. 452 (1994). *Alabama v. Brown*, 513 U.S. 801 (1994). The Court of Criminal Appeals affirmed the petitioner's conviction on March 3, 1995. *Brown v. State*, 668 So. 2d 102 (Ala. Crim. App. 1995). Concerning the petitioner's statement that is the crux of this issue, the court held:

> This is certainly not an unambiguous request for counsel as required by *Davis*. Therefore, the appellant's assertion that his statements to the police should have been suppressed because, he says, they were obtained in violation of *Miranda v.*

2

Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966) and *Edwards v. Arizona*, 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981), is without merit." *Brown*, 668 So. 2d at 103. His application for rehearing was denied, as was his petition for a writ of certiorari. *Ex parte Brown*, 668 So. 2d 105 (Ala. 1995).

**C. Discussion**

### 1. Law of the Case Doctrine

The petitioner contends that the statement by the Alabama Court of Criminal Appeals in its initial decision that petitioner's "request to speak to a friend who is also an attorney was clearly an invocation to his right to counsel" is the law of the case. He argues that the subsequent holdings by the Court of Criminal Appeals and the magistrate judge that this statement was an equivocal request for an attorney violated the law of the case doctrine. Generally, a "vacation by an appellate court of the lower court's judgment vacates the entire judgment below, divesting the lower court's earlier judgment of its binding effect." *United States v. M.C.C of Florida, Inc.*, 967 F.2d 1559, 1561 (11th Cir. 1992). However, a "vacation which merely requires further consideration in light of a new Supreme Court decision . . . is of a much more limited nature." *Id.* at 1562. The effect of such a vacation "was not to nullify all proceedings. On the contrary, it merely required the court to reconsider its opinion . . . in light of the new law set forth in [the new Supreme Court decision]." *Id.*

At the time of the initial decision of the Alabama Court of Criminal Appeals, the United States Supreme Court had yet to release its opinion in *Davis*. Under pre-*Davis* law, once an accused expressed his desire to communicate with the police through counsel, questioning of the accused must cease unless the accused subsequently initiated further communication with the police. *Edwards v. Arizona*, 451 U.S. 477, 484 (1981). If the accused made an equivocal request

3

for counsel, the police were required to clarify that request before any further questioning could take place. *Owen v. Alabama*, 849 F.2d 536, 539 (11th Cir. 1988).

In its initial opinion, the Court of Criminal Appeals stated that "the appellant's request to speak to a friend who is also an attorney was clearly an invocation of his right to counsel." *Brown v. State*, 630 So. 2d 481, 484 (Ala. 1993). However, after the court made that statement, its discussion of this issue continued:

> The State argues in its brief that, "At most, the comments made by appellant could be considered an equivocal invocation of his right to counsel." However, even if we assumed that the appellant's request to speak to an attorney was equivocal or ambiguous, the failure of investigators to clarify his request to speak to his attorney still violates *Miranda*. . . . Contrary to the State's argument, we hold that at the very least the appellant's comment was an equivocal request to speak to counsel. Additionally, we conclude that the investigators did not clarify the appellant's request to confer with counsel. . . . Thus, regardless whether the appellant's request to speak to his friend who is an attorney is considered a clear request or is considered an equivocal request, the investigators' failure to respond to or to clarify that request nonetheless violated the appellant's Fifth Amendment rights.

*Id.* at 484-85.

Despite the previous statement that the request was "clearly an invocation of the right to counsel," it is clear in the context of the entire opinion that the Court of Criminal Appeals did not conclusively decide whether the request was equivocal or unequivocal. Instead of holding that the request was unequivocal, the court stated that no matter whether the request was equivocal or not, the accused's Fifth Amendment rights were violated. Thus, the distinction between whether the request was equivocal or unequivocal was not an important factor in the decision and, therefore, the court failed to conclusively make that distinction.

However, in its subsequent decision on remand from the United States Supreme Court, the Court of Criminal Appeals was directed to reconsider its opinion in light of the new Supreme

Court decision in *Davis*. In *Davis*, the Supreme Court held that an accused must unequivocally request an attorney in order to require officers to cease their questioning of the accused. *Davis*, 512 U.S. at 459-60. An equivocal request does not require officers to cease questioning or further clarify the request of the accused. *Id.*

After the *Davis* decision, the question of whether the petitioner made an equivocal or unequivocal request for counsel became important. The Court of Criminal Appeals on remand was called upon to make a distinction which it had not been previously required to make. Because in its previous decision, the court had not conclusively decided whether the request was equivocal or unequivocal and new Supreme Court law made such a distinction crucial, it was free to visit this question on remand. The law of the case doctrine did not preclude the Court of Criminal Appeals from deciding on remand whether the request of the petitioner for counsel was equivocal or unequivocal. Therefore, the decision of the Court of Criminal Appeals and the magistrate judge did not violate the law of the case doctrine.

### 2. Actual Invocation of the Right to Counsel

As part and parcel of the first challenge, the petitioner also asserts that

> . . . the Magistrate Judge glosses over the fact that Detective Zarzour responded to Mr. Brown's request by stating, "Well, I understand that. I understand what you are saying." Instead, the Court indicated that "the record shows that immediately after the terse, ambiguous statement by the petitioner, he began to explain his involvement in the crime."

(Doc. 29, p. 4).[1] The petitioner also claims that the magistrate judge's review further excludes the fact that the petitioner "did not explain his involvement in the crime until after Detective

---

[1] The designation "Doc. 29" indicates the number assigned to the document when it was filed with the district court. The documents appear in the district court file in numerical order and the document number appears in the bottom right-hand corner on the first page of each document.

5

Zarzour stated that he understood [the petitioner's] request for counsel. And after Detective Braden proceeded to attempt to convince [the petitioner] that they already knew how he was involved in the crime and implied to Mr. Brown that his statement was a mere formality." (*Id.*, p. 5).

The Report and Recommendation of the magistrate judge did not gloss over Detective Zarzour's reply to the petitioner. To the contrary, it was placed in context on pages 27 and 28 of the Report. Because so much is lost when statements are taken out of context, the court will again cite the pertinent portion of the recorded interview, as delineated by the magistrate judge:

> About one-third of the way through the interview, when the officers asked him [the petitioner] to go back through the events, the following occurred:
>
> Q (By Sgt. Braden) From the very start.
>
> Q (By Det. Zarzour) From the very start. From the time he gave you the letter--
>
> A [appellant] Okay.
>
> Q Go ahead.
>
> **A Is it going to piss y'all off if I ask for my--to talk to a friend that is an attorney. I mean, I'm going to do whatever I have got to do. Don't get me wrong.**
>
> **Q Well, I understand that. I understand what you are saying.**
>
> **A You have got to realize, man, I'm ... scared to death.**
>
> **Q Well, and rightfully so. I don't blame you one bit because there's a serious problem here, but if you didn't pull the trigger, then we need to know what exactly happened, okay?**
>
> **Q (By Sgt. Braden) It's up to you, Greg, whatever you want to do. Like he said.**
>
> **A Listen, I don't know exactly what happened. I was not there.**

> Q (By Det. Zarzour) Okay.
>
> Q (By Sgt. Braden) We know you met--we know you met him over at Pick-a-Pack, we know y'all left, we know you brought him back. We know all that. We know where you were, we have got people that have seen you, we know. It's like I told you earlier, we already know.
>
> Q (By Det. Zarzour) That's why I said don't beat around the bush, let's get to it and get it over with.
>
> A All right....

(Doc. 13, Ex. D, Tr. pp. 32-34)(emphasis added).

In *United States v. Mendoza-Cecelia*, 963 F.2d 1467 (11th Cir. 1992), the Eleventh Circuit faced a situation where a similar reference was made to an attorney by the defendant. The suspect's statement during questioning that "I don't know if I need a lawyer, maybe I should have one, but I don't know if it would do me any good at this point," was found to be an equivocal request for an attorney. *Id.* at 1472. The Eleventh Circuit held that the suspect's statement "clearly reveals that he was 'contemplating exercising his right to have an attorney present.' (citation omitted). Having indicated a 'possible desire' for an attorney, . . . [suspect] made a qualifying equivocal indication." *Id.* at 1472. In the present case, the petitioner's question of "[i]s it going to piss y'all off if I ask for my-to talk to a friend that is an attorney," is similarly an indication of a "possible desire" for an attorney and not an unequivocal request for one.

In *Coleman v. Singletary*, 30 F.3d 1420 (11th Cir. 1994), the defendant was being questioned for the murder of his sister by police detectives. During Coleman's tape-recorded confession (and after he was read his *Miranda* rights), a telephone call from a public defender interrupted the questioning. The detectives told Coleman that the public defender requested that they "cease any further interview at this time." The public defender informed an assistant state

7

attorney that she intended to instruct Coleman not to answer any further questions. However, the assistant state attorney refused to allow the public defender to speak to Coleman on the phone and did not tell him that the public defender planned to instruct him not to answer any more questions. The officers then turned the tape recorder back on and the following exchange took place:

> Q (by Det. Valente): "and what you're saying, or what you're about to say you're going to do of your own free will; is that correct?"
>
> A(Coleman): "Yes. Unless, what about that one guy, though."
>
> Q (by Det. Valente): "What guy?"
>
> A(Coleman): "The guy--"
>
> Q(by Det. Rigney): "Public defender"
>
> A(Coleman): "Yeah."
>
> Q(Det. Valente): "Okay."
>
> Q(Det. Rigney): "I explained to him what the public defender was--"
>
> Q(Det. Valente): "Okay. Tony, do you feel you want to have a public defender?"
>
> A(Coleman): "I don't know. But if he said to stop it I don't want to do what he said not to do."
>
> Q(By Det. Valente): "All right. Well, do you have any objections to talking to us? It's up to you. Now, again, you know what our job is. We need to know what happened, and that's basically it. But we don't want to do anything, we don't want to force you to do anything that you don't want to do. If you want to talk to [us], fine, we'll continue with the conversation. You can stop anytime you want to stop. You can ask us any questions but it's up to you. If you want to talk to us, we'll listen. If you want us to stop asking questions, we'll do that."
>
> A(Coleman): "I guess if that guy thinks its all right, I don't care."

Coleman argued that the trial court erred in admitting his statements made after this exchange took place because he made a request for an attorney. The court stated that Coleman's

8

statement was "capable of equally plausible, differing interpretations." *Coleman*, 30 F.3d at 1425-26. The Eleventh Circuit, citing *Davis*, held that the trial court properly admitted the entire statement because it was an equivocal request for an attorney. *Id*. at 1426. In the present case, the petitioner's question of whether it would "piss y'all off if I ask for my-to talk to a friend that is an attorney," is similarly unclear as to whether he was requesting an attorney.

In the opinion of this court, the inquiry by the petitioner was not the unambiguous, unequivocal request that a law enforcement officer would have reasonably understood as an invocation of the right to counsel. Detective Zarzour's statement that he understands follows the petitioner's inquiry and the petitioner's statement, "I am going to do whatever I have got to do. Don't get me wrong." (*Id.*). Detective Braden then makes it clear to the petitioner that the decision to talk to the officers or to invoke his right to counsel is the petitioner's choice. At this point, the petitioner clearly has not invoked his right to counsel. He then decides to answer the officers' questions. Upon a review of the record, the Report and Recommendation, and the petitioner's objections, the court agrees with the magistrate judge that, after full consideration of the petitioner's inquiry, Detective Zarzour's and Detective Braden's comments, "the dynamics involved in custodial interrogations between the interrogator and the individual being questioned, and the context," the standard set forth in *Davis* has not been satisfied. (Doc. 19, p. 29).

## II. PROMISES OF BENEFICIAL TREATMENT

The petitioner next asserts that the magistrate judge incorrectly concluded that the petitioner's confession was not the result of improper promises of beneficial treatment. (Doc. 29, p. 6). According to the petitioner, the magistrate judge misapplied the standard set forth in *Bram v. United States*, 168 U.S. 532, 542-43 (1897), that a confession cannot be obtained by "any direct or implied promises, however slight, nor by the exertion of any improper influence."

9

Contrary to the petitioner's assertions, the magistrate judge applied the correct standard in reviewing the voluntariness of his confession:

> Concerning the second claim, that his statements were prompted by unlawful inducements and actions, and therefore involuntary (citation omitted), the clearly established Supreme Court precedent requires an inquiry into whether, under the totality of the circumstances, the confession was voluntarily obtained by the police or whether it was improperly obtained through the use of any direct or implied promises or the exertion of any improper influence that rendered it involuntary...

(Doc. 19, p. 20)(citations omitted).

Reviewing the transcript of the interview, particularly the portions quoted by counsel for the petitioner in the objections, the court finds that the petitioner's statements were knowingly, voluntarily, and intelligently made. The actions and comments of the detectives in this case did not violate the petitioner's Fifth, Sixth, and Fourteenth Amendment rights as alleged.

### III. SUFFICIENCY OF THE EVIDENCE

Lastly, the petitioner asserts that the magistrate judge incorrectly found that his challenge to the sufficiency of the evidence was procedurally barred for failure to raise the claim in state court. (Doc. 29, p. 9). He asserts, contrary to the magistrate judge's finding, that this claim was raised on direct appeal. The court does not agree.

"Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998), *cert. denied* ___ U.S. ___, 119 S. Ct. 405(citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). The petitioner must make the state court aware of the particular federal constitutional issue. *Snowden*, 135 F.3d at 735.

10

On direct appeal, the petitioner presented two specific issues:

I.  Is the admission of a confession obtained from a defendant in custody, after he has requested an attorney and the request disregarded, a violation of both the Fifth and Sixth Amendments to the United States Constitution so as to require a reversal of a conviction obtained thereby?

II. Is the admission of a confession obtained following promises of beneficial treatment to the accused by interrogating officers a violation of the Alabama Constitution and the United States Constitution so as to require a reversal of a conviction obtained thereby?

(Doc. 13, Ex. D, p. 2). Both issues clearly challenged the admissibility of the confession on constitutional grounds. One sentence in the argument portion of the brief states, "[i]t cannot be seriously disputed that all, or at least practically all, of the State's evidence which tended to directly connect the appellant Brown to the death of Jerry Callahan was furnished by a transcribed and videotaped statement which was extracted from the appellant by police detectives from the city of Hoover, Alabama, after he had been taken into custody at the jail of that city." (Doc. 13, Ex. D, p. 5). This statement is not the sufficient presentation of the federal constitutional claim to the state courts that is required.[2]

Even were this claim properly before the court, the petitioner would not be entitled to any relief. Contrary to the petitioner's assertion, the magistrate judge did not erroneously consider the petitioner's confession in assessing the sufficiency of the evidence. The confession was properly considered by the magistrate judge as it constituted admissible evidence of the petitioner's guilt. Further, reviewing the claim under the standard set forth in *Jackson v.*

---

[2] In reaching this conclusion, the court notes that the same statement is found in the petitioner's application for a rehearing when the Court of Criminal Appeals affirmed his conviction on remand. (*See* Doc. 13, Ex. L, p. 5). Counsel for the petitioner further asserts, and the court assumes for purposes of this review, that the statement was also similarly referenced in his petition for a writ of certiorari. This assumption is necessary as the record does not include the petitioner's brief, but only the petition, which does not include the statement. (*See* Doc. 13, Ex. M).

11

*Virginia*, 443 U.S. 307 (1979), the court also concludes the petitioner is not entitled to relief.

## IV. CONCLUSION

The court has considered the entire file in this action, including the Magistrate Judge's Report and Recommendation, and the objections of the petitioner and has reached an independent conclusion that the Report and Recommendation is due to be adopted and approved. The court hereby adopts and approves the findings and recommendation of the magistrate judge as the findings and conclusions of the court. The petition for writ of habeas corpus is due to be dismissed. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this _21st_ day of September, 1999.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge

12